# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANTWAN TYSON #20678-075, | ) |
| Movant, | ) |
| v. | ) No. 3:20-cv-00321 |
| UNITED STATES OF AMERICA, | ) Judge Trauger |
| Respondent. | ) |

## MEMORANDUM AND ORDER

The court sentenced the petitioner, Antwan Tyson, to 105 months in prison after accepting his plea of guilty to one count of robbery affecting commerce in violation of 18 U.S.C. § 1951. He has filed a timely pro se Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. No. 1.) The government has responded to the Motion. (Doc. No. 13.) Upon review of the record, the court finds that an evidentiary hearing is not warranted, *see* Rule 8(a) of the Rules Governing Section 2255 Proceedings, and the Motion will be denied for the reasons explained below.

### I. STANDARD FOR RELIEF

To be entitled to relief, a petitioner who moves to vacate or correct his sentence under Section 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on

the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of Section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a Section 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

## II. RELEVANT BACKGROUND

On March 23, 2018, the petitioner was on supervised release from a previous federal conviction, with revocation proceedings already pending for alleged violations, when he robbed a Hardee's restaurant in Madison, Tennessee while brandishing a firearm. (Order setting further hearing on Superseding Petition to Revoke Supervision, Case No. 3:11-cr-00042 (hereinafter *Tyson I*) at ECF No. 75, PageID# 182; Plea Agreement, Case No. 3:19-cr-00027 (hereinafter *Tyson II*) at ECF No. 24, PageID# 36–37.)[1] On April 3, 2018, the court issued a warrant for the petitioner's arrest on the Supervised Release Violation Petition. (*Tyson I* at ECF No. 77.) On April 5, 2018, the government filed a new criminal complaint charging the petitioner with two counts arising from the Hardee's robbery: (1) robbery affecting commerce in violation of 18 U.S.C. § 1951; and (2) using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). (*Tyson II* at ECF No. 1.) It obtained a second arrest

---

[1] For clarity, the court will refer to documents filed in this case by "Doc. No." and page number and will refer to documents in the underlying criminal cases by "EDF No." and "PageID" number.

warrant based on the new charges that same day. (*Tyson II* at ECF No. 2.) The petitioner was arrested on April 9, 2018, and both warrants were returned executed on that date. (*Tyson I* at ECF No. 7; *Tyson II* at ECF No. 4.) On May 2, 2018, the petitioner appeared before the Magistrate Judge, waived his right to a detention hearing in both cases, and was ordered to be detained pending further proceedings. (*Tyson I* at ECF No. 86; *Tyson II* at ECF No. 13.)

On May 4, 2018, the petitioner filed an unopposed motion to continue his revocation hearing in *Tyson I* for ninety days on the basis that "[t]he parties [were] conducting negotiations and discussions in an attempt to reach a resolution of both the violation petition as well as the new charges in the complaint." (*Tyson I* at ECF No. 87.) The court granted that motion on May 4, 2018, resetting the revocation hearing for August 24. (*Id.* at ECF No. 88.) Over the next seven months, the petitioner filed two more unopposed motions to continue his revocation hearing in *Tyson I*, plus a joint motion to continue by both parties, all on the basis that the parties were continuing to negotiate a resolution to both the violation petition and the new charges; the court granted each motion to continue. (*Tyson I* at ECF Nos. 89–94.)

Also during that span of time, the petitioner and his attorney signed and submitted waivers on May 22, 2018, and August 10, 2018, of his Speedy Trial Act (STA) right to indictment within thirty days of arrest on the new charges. (*Tyson II* at ECF Nos. 14–15.) Both waivers asserted that the petitioner had "been advised of [his] rights under the Speedy Trial Act" and that "[u]nderstanding [his] rights, and after consultation with counsel," he "knowingly and voluntarily waive[d] the 30-day time period for filing the indictment." (*Id.*; Doc. Nos. 1-1, 1-2.) The waivers consented to extensions of the indictment deadline until August 1, 2018, and September 7, 2018. (*Id.*) He ultimately waived indictment on the new charges altogether and pleaded guilty pursuant to a plea agreement on March 5, 2019, to one count of robbery affecting

3

commerce, as charged in an information from which the government omitted Count 2 of the original complaint. (*Tyson II* at ECF Nos. 16, 21–24.) The plea agreement included joint recommendations for sentencing on both the new charge and the pending revocation on the old conviction. (*Id.* at ECF No. 24, PageID# 40.) In the same March 5, 2019 hearing at which the court accepted the petitioner's plea in *Tyson II*, it held the long-postponed hearing on the revocation petition in *Tyson I*, at which the government dismissed one alleged violation, and the petitioner pleaded guilty to four violations. (*Tyson I* at ECF No. 98.)

The court held a sentencing hearing in both cases on May 30, 2019, and sentenced the petitioner to 105 months in prison on the new conviction to run consecutively to 36 months on the revocation of supervised release. (*Tyson I* at ECF No. 100; *Tyson II* at ECF No. 30, PageID# 58.)

### III.     ANALYSIS

The petitioner claims that his counsel was ineffective for failing to move to dismiss the new charges against him pursuant to the STA and instead having the petitioner sign a waiver of the STA indictment deadline when forty-two days passed without indictment after the petitioner's arrest. (Doc. No. 1 at 3.)

The STA requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The Act goes on to provide that "[a]ny period of delay resulting from other proceedings concerning the defendant" "shall be excluded in computing the time within which an information or an indictment must be filed." *Id.* at § 3161(h)(1). In April and May 2018, during the thirty

days after the petitioner's arrest, the law in this Circuit was that the unspecified "other proceedings concerning the defendant" that essentially toll the thirty-day STA period for filing an indictment include pre-indictment plea negotiations. *United States v. Montgomery*, 395 F. App'x 177, 182 (6th Cir. 2010) ("We have held that plea negotiations are an example of 'other proceedings' not specifically listed in § 3161(h)(1) which may be excluded from the Speedy Trial Act calculation."). It was not until April 2019, a month after the petitioner pleaded guilty, that the Sixth Circuit held that rule had been abrogated by a Supreme Court opinion that ruled on an analogous issue. *United States v. White*, 920 F.3d 1109, 1111 (6th Cir. 2019), *cert. denied*, No. 19-587, 2020 WL 1906568 (U.S. Apr. 20, 2020). The government concedes, however, that the information filed in this case was ultimately untimely. (Doc. No. 13 at 4 n.3.)

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Sixth Amendment right to counsel "extends to the plea-bargaining process," *Lafler v. Cooper*, 566 U.S. 156, 162 (2012), and the *Strickland* test applies to "challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The Supreme Court has explained what a heavy burden a petitioner bears in such circumstances:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

When reviewing claims of ineffectiveness of counsel, the court is mindful that its scrutiny of defense counsel's performance is highly deferential. The petitioner's counsel is strongly presumed to have rendered adequate assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Strickland*, 466 U.S. at 689–90 ("strong presumption" that counsel's conduct falls within a wide range of reasonable professional assistance); *see Nix v. Whiteside*, 475 U.S. 157, 165 (1986).

The petitioner's motion rests on the claim that counsel could and should have gotten the charges against him dismissed rather than negotiating the plea deal. That claim fails for two reasons: (1) the petitioner cannot overcome the presumption and evidence that counsel made a sound strategic decision in consultation with his client, and (2) there is no likelihood that the charges against the petitioner would have been dismissed with prejudice.

As discussed above, the court begins with a very strong presumption that the petitioner's

6

Case 3:20-cv-00321   Document 15   Filed 09/14/20   Page 6 of 10 PageID #: 53

appointed counsel performed his duties reasonably. Additionally, the record before the court includes a sworn affidavit from the petitioner's plea counsel that they discussed his client's options, including filing an STA motion, and that they decided against that motion for strategic reasons. (Doc. No. 13-1.) Specifically, counsel testified under oath that, because of the petitioner's criminal history, a conviction on the new firearm charge would carry a mandatory consecutive sentence of 25 years in prison. (*Id.* at 2.) Based on that exposure and the strength of the evidence against the petitioner—including two photographic lineup identifications of him as the robber and "quality video surveillance showing Mr. Tyson brandishing a gun"—counsel recommended that the petitioner cooperate with the government to obtain a favorable plea deal. (*Id.*) Although the petitioner did at one point express interest in filing a motion to dismiss under the STA, counsel advised against it:

> I explained to him that there was no legitimate basis to have the case dismissed with prejudice, which is legally a difficult bar to reach and one that I did not believe I could realistically establish here, and recommended that he not pursue a dismissal. To that point, the government had already freely provided discovery to us to review, evaluate, and prepare Mr. Tyson's case, and the case was still on track for likely settlement. Mr. Tyson eventually agreed with my advice not to pursue a dismissal of his charges and we agreed not to file a motion to dismiss.

(*Id.* at 3–4.) Counsel at that time believed that the government was dealing with the petitioner in good faith, and that a favorable plea agreement was likely. (*Id.* at 4.) Under those circumstances, he believed filing a motion to dismiss would be counter-productive: "pursuing a dismissal of the charges, in my opinion, would have had no practical effect on the prosecution of Mr. Tyson and could have worsened his position in resolving that case." (*Id.*) As indicated above, the deal counsel obtained ultimately included dismissal of the new firearm charge and an agreed sentence for significantly less than conviction on that single charge would have mandated. (*Id.* at 4–5.)

Nothing in the petitioner's Motion disputes that counsel and the petitioner agreed on this

7

strategic decision, and the petitioner has not filed a reply to refute counsel's testimony. In short, the record before this court refutes the petitioner's implicit allegation of objectively deficient performance, "thus making an evidentiary hearing unnecessary." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (finding that district court was correct to deny evidentiary hearing where 2255 movant had "not identified any evidence, other than his own testimony, that he could present to support his claim" in support of his claim). The petitioner's ineffective-assistance claim, therefore, fails on the first prong of *Strickland*, because counsel's performance was not objectively deficient.

Moreover, the government and counsel maintain—and the Court agrees—that a motion to dismiss pursuant to the STA would not have produced a final favorable outcome to the petitioner on the new charges. The STA permits dismissal under these circumstances to be with or without prejudice, based on three factors:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C.A. § 3162(a)(1). The seriousness of the armed robbery underlying the new charges would have weighed in favor of dismissal without prejudice. The good faith negotiations between the parties that resulted in the delay in the petitioner's indictment also favor of dismissal without prejudice. And although the government should have either insisted on timely waivers or proceeded with a timely indictment, the need to incentivize speedier action would likely not have outweighed, in the Court's view, the other circumstances in this case. "The main considerations that courts have taken into account when examining [the third] factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government

8

engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004) (quoting *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000)). The record plainly establishes that the parties were dealing in good faith toward a mutually agreeable settlement and that the petitioner— who obtained early discovery and was already subject to detention for the supervised release violation—was not prejudiced by the delay. Accordingly, a motion to dismiss based on the STA would not have been reasonably likely to result in dismissal of the new charges with prejudice. The petitioner, therefore, cannot establish that his counsel's allegedly ineffective performance had any impact on the outcome of his case.

Finally, the court observes that the petitioner has requested that counsel be appointed to represent him in this case. (Doc. No. 14.) He explains that he is unable to afford counsel to assist him, but he does not assert that the issues raised in his motion are particularly complex or otherwise beyond his abilities to prosecute. Petitioners have no absolute right to appointment of counsel in a habeas action. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); see also 18 U.S.C. § 3006A (a)(2)(B) (counsel may be appointed for financially eligible persons seeking relief under 28 U.S.C. § 2255 when the court determines "that the interests of justice so require"). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). Courts make this determination based on factors such as "the viability or frivolity of the indigent's claims, the nature and complexity of the case, and the indigent's ability to present the case." *Sellers v. United States*, 316 F. Supp. 2d 516, 522 (E.D. Mich. 2004).

The issues in this case are not complex, and the court has found that the petitioner's claim is not viable. Even with the assistance of new counsel, the petitioner would not be able to

9

overcome the simple fact that he agreed to waive his STA rights for sound, strategic reasons, and that the decision appears ultimately to have worked to his significant benefit. Accordingly, appointment of counsel in this matter is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the petitioner's Motion to Vacate, Set Aside or Correct Sentence (Doc. No. 1) is **DENIED**, and this action is **DISMISSED** on its merits. The petitioner's Motion and Request for Appointment of Counsel (Doc. No. 14) is **DENIED** as moot.

Because the petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability from this order is **DENIED**. *See Castro v. United States*, 310 F.3d 900 (6th Cir. 2002) ("A petitioner is entitled to a COA only if he 'has made a substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2).").

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge